IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHNATHAN G.,

     Plaintiff,

v.                                                  Civ. No. 24-1278 GBW

FRANK BISIGNANO,
*Commissioner of the Social Security*
*Administration*,

     Defendant.

## ORDER DENYING REMAND

THIS MATTER comes before the Court on Plaintiff's Motion to Remand the

Social Security Agency ("SSA") decision to deny Plaintiff Social Security Disability

Insurance benefits ("SSDI") and Supplemental Security Income ("SSI"). *Doc. 11*. For the

reasons explained below, the Court DENIES Plaintiff's motion and AFFIRMS the

judgment of the SSA.

### I.    PROCEDURAL HISTORY

Plaintiff filed an initial application for SSDI and SSI on October 16, 2020, alleging

disability beginning July 7, 2019. Administrative Record ("AR") at 32. Plaintiff's

application was denied on initial review on April 26, 2021, and upon reconsideration on

April 14, 2022. AR at 155. On January 5, 2023, a telephonic hearing was held by an

Administrative Law Judge ("ALJ"). *Id*. The applications for benefits were denied on

February 15, 2023.  AR at 152.  Plaintiff then filed a request for review with the Appeals

Council, and an Order remanding the claim to the ALJ was issued on July 11, 2023.  AR

at 173.  An in-person hearing was held on February 29, 2024, and the applications were

denied on May 21, 2024.  AR at 32, 29.  Plaintiff filed another request for review with the

Appeals Council, which was denied on August 28, 2024, making the ALJ's decision the

final decision of the Commissioner.  AR at 15-16.  On December 19, 2024, Plaintiff filed

suit in this Court.  *Doc. 1*.

II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the

Commissioner only to determine whether it (1) is supported by "substantial evidence"

and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Hum. Servs.*,

933 F.2d 799, 800–01 (10th Cir. 1991).  "In reviewing the ALJ's decision, [the Court]

neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency."

*Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks

omitted).

"Substantial evidence is more than a mere scintilla.  It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Casias*, 933 F.3d at 800 (internal quotation marks omitted).  "The record must

demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to

discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## III.     ALJ EVALUATION

### A.  <u>Legal Standard</u>

For purposes of both SSDI and SSI, an individual is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520.[1] If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id*. § 404.1520(a)(4).

---

[1] Plaintiff has applied for both SSDI and SSI. The five-step test for determining disability is the same for both types of benefits, although the test is codified in two separate sections of the Code of Federal Regulations. 20 C.F.R § 404.1520 governs SSDI; § 416.920 governs SSI.

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable…impairment…or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**B. The ALJ's Decision**

On May 21, 2024, the ALJ issued a decision denying Plaintiff's application for SSDI and SSI benefits. *See* AR at 42. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 7, 2019, the alleged onset date. AR at 34.

At step two, the ALJ found Plaintiff had the following severe impairments: left eye blindness and status-post open reduction and internal fixation of the left mandible with maxillomandibular fixation. AR at 35. The ALJ found that Plaintiff's medically determinable mental impairments of anxiety and post-traumatic stress disorder were not severe. *Id*. He determined that Plaintiff had a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a mild limitation regarding concentrating, persisting, and maintaining pace; and a mild limitation in adapting or self-management. *Id*.

At step three, the ALJ found that Plaintiff's severe impairments—both

individually and in combination—did not meet or equal the severity of an impairment

in the Listings.  AR at 36.  As such, disability could not be established on medical facts

alone.  *Id*.  The ALJ also noted that while there was evidence that Plaintiff uses a cane

and/or walker, the evidence did not establish that such a hand-held assistive device was

medically necessary under Social Security Ruling 96-9p.  *Id*.

> At step four, the ALJ found Plaintiff had the RFC
>
> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> except he can never climb ladders, ropes, or scaffolds; he can occasionally
> climb ramps and stairs; he can occasionally stoop, kneel, crouch, and
> crawl; he must avoid all exposure to unprotected heights, dangerous
> machinery, and moving machinery; he is limited to work that may be
> performed with vision in only one eye; he is limited to jobs that do not
> require frequent verbal communication.

AR at 36.  In making this finding, the ALJ concluded that Plaintiff's medically

determinable impairments could reasonably be expected to cause his alleged

symptoms.  AR at 37.  However, Plaintiff's statements about the intensity, persistence,

and limiting effects of his symptoms were not entirely consistent with the medical

evidence and other evidence in the record.  *Id*.  The ALJ found persuasive the medical

opinions of Dr. Victor Salgado, Dr. Jill Blacharsh, and Dr. Kathleen Padilla.  AR at 39-40.

The ALJ found the medical opinion of Dr. Michael Montoya only somewhat persuasive

due to inconsistencies in the record before him.  *Id*.  The ALJ found unpersuasive the

medical opinions of Dr. Eileen Brady, Dr. Scott Spoor, and consultative examiner Kris

Lichtle because of the notable inconsistencies with their opinions and evidence in the record before the ALJ. *Id.*

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that he could still perform jobs that exist in significant numbers in the national economy. AR at 41. Specifically, the ALJ found that Plaintiff could perform the requirements of three representative occupations: (1) Housekeeper (DOT 323.687-014); (2) Laundry Aid (DOT 361.687-014); and (3) Garment Sorter (DOT 222.687-014). AR at 42. Accordingly, the ALJ concluded that Plaintiff was not disabled from July 7, 2019, through the date of the decision. *Id.*

## IV.    PARTIES' POSITIONS

Plaintiff asserts that the ALJ erred by (1) finding that Plaintiff's statements were inconsistent with the evidence; (2) finding that a handheld assistive device was not medically necessary; and (3) failing to account for non-severe mental impairments in the Plaintiff's RFC. *Doc. 11-2.*

Specifically, as to the first point, Plaintiff asserts that the ALJ's finding that his statements regarding his symptoms were inconsistent with the evidence was not based on substantial evidence. *Id.* at 11. Plaintiff contends that the ALJ "cherry-picked" the record to support his findings and that such reliance amounts to reversable error. *Id.* at 13; *see also id.* at 16. Plaintiff suggests that due to this selective consideration of evidence

the ALJ (1) improperly relied on findings of normal vision in his right eye to discount Plaintiff's allegations regarding his symptoms, (2) relied on inappropriately decontextualized findings of a "normal gait," (3) ignored significantly probative evidence of consistent facial swelling, (4) mischaracterized Plaintiff's daily activities to support his findings, and (5) improperly relied on the October 2021 Cooperative Disability Investigations Unit Report.  *Id*. at 12-16.

Regarding the second point, Plaintiff argues that the ALJ "failed to build an accurate and logical bridge from the evidence to his finding with respect to the use of an assistive device."  *Id*. at 18.  Plaintiff asserts that the ALJ's evaluation that a cane or walker was not medically necessary was merely conclusory and with no explanation as to what evidence supports the finding, there can be no meaningful review.  *Id*.

Finally, regarding the third point, Plaintiff argues that that the ALJ assessed Plaintiff's RFC without providing any meaningful discussion of Plaintiff's non-severe mental impairments that were found at step two.  *Id*. at 23.  He contends that the ALJ's failure to explain the absence of Plaintiff's mild mental limitations from the RFC warrants reversal.  *Id*. at 26.

Defendant responds that the ALJ's decision should be affirmed because (1) the ALJ complied with the agency's articulation requirements when evaluating Plaintiff's symptoms and Plaintiff is improperly asking the Court to reweigh the evidence, (2) the

Court can follow the ALJ's reasoning for not including a hand held assistive device in the RFC assessment, and (3) the ALJ's consideration of Plaintiff's mental impairments was adequate. *See Doc. 17*.

Ultimately, the Court finds that the SSA decision should be AFFIRMED.

V.    ANALYSIS

A.    **The ALJ Adequately Considered the Evidence in the Record and the Court May Not Reweigh the Evidence.**

Plaintiff argues that the ALJ made a reversible error in determining that his statements regarding his symptoms were inconsistent with the medical evidence in the record. *Doc. 11-2* at 11.  As part of the RFC determination, the ALJ evaluated Plaintiff's statements regarding his symptoms and their intensity, persistence, and limiting effects. AR at 37.  He determined that despite Plaintiff's "allegations of left-eye blindness, left-side facial pain and numbness, and difficulty speaking due to jaw pain, the evidence of record does not fully support his allegations about the severity of these symptoms."  AR at 38.

In assessing a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments.  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013).  The ALJ is not, however, required to "discuss every piece of evidence." *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) (quoting *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007)).  The decision is adequate "if it discusses the

'uncontroverted evidence' the ALJ chooses not to rely upon and any 'significantly probative evidence' the ALJ decides to reject." *Id*. (quoting *Frantz*, 509 F.3d at 1303).

In evaluating the claimant's symptoms, the ALJ must articulate "specific reasons" that are "closely and affirmatively linked" to evidence in the record and "not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citations omitted). But the Tenth Circuit has explained that the symptom evaluation "does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Further, the ALJ need not take a claimant's allegations about their symptoms at face value. *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (citing *Hawkins v. Chater*, 113 F.3d 1162 (10th Cir. 1997)). The ALJ's findings regarding a plaintiff's subjective symptom allegations are entitled to "particular deference" by a reviewing court. *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002).

### 1. Plaintiff's Vision

Plaintiff alleges that the ALJ inadequately relied "on findings of adequate vision in the right eye as a basis to reject Plaintiff's allegations of visual limitations" and that it is "unclear how normal vision and eye function in the right eye can be a basis to discredit Plaintiff's allegations regarding his symptoms." *Doc. 11-2* at 12-13. This

argument must fail because the ALJ explicitly credited Plaintiff's severe ocular limitations in formulating the RFC.

At the hearing on February 29, 2024, Plaintiff stated that due to the loss of his left eye, he tends to lose his depth perception, and his right eye will often get blurry from his medication. AR at 67. The ALJ considered this evidence and more when formulating Plaintiff's RFC. Specifically, he relied on the opinion of Dr. Victor Salgado, who "opined that the Claimant would have 'severe' visual limitations due to the absence of his left eye and decreased visual field." AR at 39, 1286. The ALJ considered Dr. Salgado's opinions that Plaintiff had diminished vision, left eye blindness, difficulty with depth perception and right-eye strain, and evidence of an empty left eye socket. AR at 39, 1280, 1282. The ALJ found the opinion persuasive because it was consistent with the evidence presented at the reconsideration and hearing levels. AR at 38; *see also* AR at 67. The ALJ also considered the opinions of Dr. Eileen Brady and Dr. Scott Spoor, who found that Plaintiff had limitations in his left eye, but that his right eye had preserved monocular vision. AR at 39, 116-18, 146-49.

In formulating the RFC, the ALJ specifically included restrictions related to Plaintiff's vision issues including the requirement that he be limited to work that can be done with only one eye and within various postural and environmental restrictions. AR at 36, 40-41. The Court can follow the ALJ's reasoning and finds that the ALJ's

11

determinations are supported by substantial evidence.  The ALJ was not required to accept Plaintiff's allegations regarding his symptoms.  *Howard*, 379 F.3d at 949.  The ALJ considered the opinions of medical experts and the Plaintiff's own testimony at the hearing.  AR at 38-39.  In the end, the ALJ specifically incorporated limitations in the RFC due to Plaintiff's "left eye blindness and intermittent right-eye blurriness."  AR at 40.  To the extent Plaintiff contends the ALJ was wrong to rely on Plaintiff's normal right-eye vision at all, that argument goes to the weight of the evidence which cannot be reweighed.  *See Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014).

### 2.  Plaintiff's Gait

Plaintiff next challenges the "context" of the exhibits relied upon by the ALJ when finding Plaintiff had a normal gait.  *Doc. 11-2* at 13.  Plaintiff alleges that while a normal gait is noted in Plaintiff's examinations, it is unlikely that gait was fully assessed given that the doctor's visits were for "conditions unrelated to the reason for assistive device usage."  *Id*.

While there is evidence throughout the Administrative Record of Plaintiff using a cane or a walker, the characterization that the ALJ "cherry-picked" instances of a normal gait and ignored other evidence is unconvincing.[2]  The ALJ discussed Plaintiff's

---

[2] There is also evidence not explicitly referenced by the ALJ that a walker was not necessary.  *See* AR at 118 ("Use of walker is not supported in that clmt [sic] was able to perform squat, gait maneuvers, arise from sitting, and mount/dismount the exam table without the walker.")

use of a walker and antalgic gait at his consultative examination in March of 2021.  AR at 38.  He also noted Plaintiff's testimony that he uses a walker or cane in different circumstances.  AR at 39.  While the ALJ could have been more thorough, his analysis demonstrates a reasoned explanation for discrediting Plaintiff's allegations regarding the severity of his symptoms.  The Court can follow the ALJ's reasoning and cannot reweigh the evidence.  *Hendron*, 767 F.3d at 956.

### 3.  Plaintiff's Facial Swelling

Plaintiff next finds fault with the ALJ's decision to "highlight two isolated instances where facial swelling was noted to be mild, or there were no notations of facial swelling, [and] ignore[] significantly probative evidence of the consistent presence of facial swelling."  *Doc. 11-2* at 14.  Plaintiff cites to various appointments where swelling was noted and to his several surgical procedures for his mouth and jaw.  *Id*. at 14-15.  Plaintiff argues that "rejecting Plaintiff's complaints…ignores the overwhelming weight of the evidence."  *Id.* at 15.  Once again, the Court is unable to reweigh evidence and can follow the reasoning of the ALJ.  The ALJ included evidence of facial swelling, pain, and tenderness; left facial droop; and facial asymmetry.  AR at 38-39.  He also noted Plaintiff's multiple surgeries and possible infection in his decision.  *Id*.  The Court finds that the ALJ's assessment is supported by substantial evidence, and as such, the Court cannot second-guess the ALJ's resulting conclusion.  *Sanchez v. Saul*, 2020 WL

1236607, at *7 (D.N.M. Mar. 13, 2020) (citing *Lax*, 489 F.3d at 1084).

### 4. Plaintiff's Daily Activities

Plaintiff contends that the ALJ mischaracterized his daily activities when finding them inconsistent with his allegations of disabling limitations. *Doc. 11-2* at 15. Plaintiff's daily activities are highly relevant in this case because he alleged limitations in every ability. *See* AR at 527. Further, information on daily activities is highly probative regarding the extent of Plaintiff's vision issues. Plaintiff highlights for error the fact that the ALJ found he performed largely independent daily activities including caring for his dog, operating a motor vehicle, and shopping in stores. *Doc. 11-2* at 15.

While the ALJ's description of Plaintiff caring for his dog (AR at 39) is not entirely consistent with the hearing testimony[3], that error does not undermine the fundamental point that Plaintiff does engage in some largely independent activities like driving and shopping. Plaintiff argues that these too are mischaracterizations because Plaintiff "does shop in stores, but hardly ever as he does not like being in stores" and "is able to drive, [but] he does not do so alone." *Doc. 11-2* at 15. The Court disagrees. The frequency with which Plaintiff shops and the fact that he operates a motor vehicle with someone else in the car does not change the fact that he can and does perform

---

[3] At the hearing on February 29, 2024, when asked how he cares for his dog, Plaintiff stated that he just "give[s] him a biscuit" and that his son provides food and water and otherwise cares for the dog. AR at 64, 68.

these actions.  The ALJ did not mischaracterize this evidence and as such it provides

substantial support for his findings.

### 5. The Cooperative Disability Investigations Unit Report

Finally Plaintiff alleges that the ALJ improperly relied on the October 2021

Cooperative Disability Investigations Unit Report which stated that Plaintiff could

"shop in stores using a single-point cane in his left hand," "carry a jug of liquid

approximately the size of windshield washer fluid in his right hand," "grasp a box with

both hands, lift the box above his head and place a box in the bed of his truck."  AR 39,

93, 1325-29.  Plaintiff argues that the investigative report is not inconsistent with

Plaintiff's statements as Plaintiff acknowledged he did shop in stores, and he was using

a cane when observed.  *Doc. 11-2* at 16.  Further, Plaintiff argues that while the report

does reference Plaintiff carrying a jug of liquid and lifting a box, there is no evidence to

suggest the weight of the items and Plaintiff did not testify to any difficulties with

lifting or carrying.  *Id*.  As such, the report cannot provide substantial evidence for

rejecting Plaintiff's claims regarding his own limitations.  *Doc. 11-2* at 16.

While Plaintiff did not testify to specific difficulties with lifting or carrying at the

hearing level, he did allege limitations with those abilities in the Adult Function Report.

AR at 527.  He also stated that at times he could not walk or stand, could only walk

short distances without stopping, did not drive, and did not shop in stores.  AR at 522-

27.  Plaintiff's testimony at the two hearings also broadly discussed diminished motor strength.  *See* AR at 58, 65-66, 93-95.  A review of the ALJ's decision indicates that the ALJ did not wholly disregard Plaintiff's claims and testimony but rather considered them and found them somewhat inconsistent with other evidence in the record.  AR at 39.  The ALJ provided a reasonable explanation for this finding.  *Id.*

Overall, the ALJ's decision concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms and the credibility of Plaintiff's own statements reflects a weighing of evidence the record, not a neglect of probative evidence.  Plaintiff's arguments impermissibly invite the Court to decide for itself evidence's weight and reliability.  *See Lax*, 489 F.3d at 1084.  Though not technically perfect, the ALJ's decision contains a proper analysis of Plaintiff's symptoms and a reasoned explanation for discrediting some of Plaintiff's subjective complaints.  The Court therefore finds, contrary to Plaintiff's argument, that the ALJ's findings were supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Casias*, 933 F.2d at 800.

**B.  The Court Can Follow the ALJ's Reasoning for Not Finding a Handheld Assistive Device Necessary**

At step three of the analysis, the ALJ found "that, while there was evidence of use of a cane and/or walker, the evidence does not establish the medical necessity of a hand-held assistive device as required by Social Security Ruling 96-9p."  AR at 36.

Plaintiff argues that the ALJ's discussion was conclusory and that the "ALJ's failure to make specific findings as to the medical necessity of a cane impedes the Court's ability to review the decision, thus warranting remand." *Doc. 11-2 at 17.*

To prove a hand-held assistive device is required, the claimant must present evidence "from a medical source that supports [his] medical need" for the device for a continuous period of at least twelve months. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00C6a. The evidence must include a description of the limitations in "upper or lower extremity functioning and the circumstances" for which the claimant needs the device. *Id.* A "medical source" under § 1.00C6a means:

> [A]n individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law.

20 C.F.R. § 404.1502(d).

A virtually identical standard applies for formulating a claimant's RFC. The ALJ must consider whether the need for an assistive device might significantly erode a claimant's potential occupational range. *Aguirre v. Saul*, 2019 WL 2552224, at *3 (W.D. Okla. June 20, 2019) (citing SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996)); *see also Staples v. Astrue*, 329 F. Appx 189, 191 n.1 (10th Cir. 2009) (SSE 96-9p's standard for evaluation of assistive devices will also apply to light work). Medical documentation

must both establish the need for the device and the circumstances where it's needed, such as "all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information." SSR 96-9P, 1996 WL 374185, at *7. However, a claimant need not produce a prescription for the device to prove its medical necessity. *Staples*, 329 F. App'x at 191.

Here, the ALJ determined that while there was evidence in the record that Plaintiff utilized a cane or walker, pursuant to the requirements of SSR 96-9p, those devices were not medically required. AR at 39-40. In doing so, he considered the opinion of Dr. Montoya that Plaintiff "would have at least some degree of reliance on an ambulatory device" and evidence that Plaintiff had a "normal gait with no motor or sensory deficits." AR at 40. Plaintiff argues that the ALJ "merely stated, without connecting his finding to the evidence, that 'the evidence does not establish the medical necessity of a hand-held assistive device.'" *Doc. 19* at 2 (quoting AR at 36). While the ALJ could have been more specific in his discussion of the medical evidence, his decision meets the Tenth Circuit's minimum articulation requirement, and the Court can sufficiently follow the ALJ's reasoning. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where…we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal."). The ALJ noted

that Plaintiff will sometimes use a cane or walker depending on distance or terrain but

found that there was no medical need for a hand-held assistive device given other

medical evidence in the record, such as evidence of a normal gait.  AR at 40.  The ALJ

also clearly stated that he "considered all symptoms" and "the entire record" in making

his RFC determination, AR at 36, which the Court credits in the absence of contrary

evidence.  *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) ("Where…the ALJ

indicates he has considered all the evidence our practice is to take the ALJ 'at [his]

word.'" (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007))).  The Court's

ability to review the decision is not impeded and the Court finds the decision should be

affirmed.

## C.  <u>The ALJ Adequately Addressed Plaintiff's Non-Severe Mental Impairments</u>

Lastly, Plaintiff argues that the ALJ erred as a matter of law by failing to account

for non-severe impairments in the RFC assessment.  *Doc 11-2* at 20.  The ALJ determined

at step two that Plaintiff had medically determinable mental impairments of anxiety

and post-traumatic stress disorder.  AR at 35.  He concluded that the impairments did

not cause more than minimal limitations in Plaintiff's ability to perform basic mental

work activities and were therefore non-severe.  *Id*.  The ALJ discussed Plaintiff's mental

impairments at step two, but Plaintiff argues that the ALJ improperly failed to consider

them again at step four and that this omission merits reversal.  *Doc. 11-2* at 23.

It is certainly true that "in determining RFC, an ALJ must 'consider the limiting effects of all the claimant's impairment(s), even those that are not severe.'" *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (quoting 20 C.F.R. §§ 404.1545(e), 416.945(e)). Further, as the ALJ noted, the limitations identified in the "paragraph B" criteria of step two are not an RFC, and the mental RFC assessment used at steps four and five requires a more detailed assessment. *See* AR at 36. However, the ALJ reasonably considered Plaintiff's mental limitations in light of the evidence and the Court is bound by a deferential standard of review where "technical perfection" is not required. *See Keyes-Zachary*, 695 F.3d at 1166.

In part four, the ALJ discussed two medical opinions and administrative findings related to Plaintiff's mental functioning. AR at 40. He found persuasive the opinions of Drs. Blacharsh and Padilla who determined that Plaintiff's mental impairments were non-severe and did not warrant mental work-related limitations. *Id.* The ALJ found unpersuasive the opinion of Kris Lichtle, M.A., who found that Plaintiff would have moderate to marked limitations, because of inconsistencies with the rest of the record. *Id.* Overall, the ALJ determined that Plaintiff would have no more than mild limitations, which often do not correspond to any restrictions in the RFC. Though the ALJ could have been more explicit in tying his assessment of Plaintiff's mild mental limitations to the final RFC, the Court can follow the reasoning. The ALJ provided an

assessment of Plaintiff's mental limitations in step two, stated that the RFC "reflects the degree of limitation I have found in the 'paragraph B' mental function analysis" and that he "considered all symptoms" and "the entire record" in making his RFC determination.  AR at 35-36.  Because Plaintiff's mental impairments were discussed at step two, the ALJ stated that all impairments were considered at step four, and information regarding Plaintiff's mental limitations was still discussed at step four, reversal is not warranted.  *See Bradley v. Colvin*, 643 F. App'x 674, 676 (10th Cir. 2016) (finding that because the ALJ considered the claimant's hand impairments at step two and took into account "all symptoms" when determining the RFC,  "the ALJ's failure to specifically discuss them at the fourth step does not require reversal"); *Wall*, 561 F.3d at 1070 (10th Cir. 2009) ("Where…the ALJ indicates he has considered all the evidence our practice is to take the ALJ 'at [his] word.'"); *Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013) (affirming where "the ALJ discussed evidence relating to depression and then pointedly omitted any limitation associated with that mental impairment in the RFC…though the ALJ…could have been more explicit in tying the former discussion to the later conclusion"); *see also Farley v. Saul*, 2020 WL 7090536, *5 (D.N.M. Dec. 4, 2020) (finding that because it was possible to follow the ALJ's reasoning in declining to assess any limitations due to Claimant's non-severe urinary incontinence, the ALJ's failure to

specifically discuss the relevant evidence at steps four and five did not necessitate remand).

Notwithstanding any minor omissions or technical errors, the Court finds that the ALJ's decision was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Casias*, 933 F.2d at 800, and should be affirmed.

## VI.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Reverse and Remand (*doc. 11*) and AFFIRMS the Commissioner's decision.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**